Filed 10/23/20  P. v. Lawson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILBUR LAWSON,<br><br>    Defendant and Appellant. | B296634<br>(Los Angeles County<br> Super. Ct. No. BA281894) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Reversed and remanded.

Boyce & Schaefer and Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

By amended information on May 30, 2006, defendant Wilbur Lawson was charged alongside codefendants Dontae Ray Williams and Sean Thomas with murder (Pen. Code, § 187, subd. (a), count 1) and robbery (*id.*, § 211, count 2).[1]  The information alleged that the murder had been committed during the commission of the robbery (§ 190.2, subd. (a)(17)).  On both counts, the information alleged inter alia that defendant personally discharged or used a firearm (§ 12022.53, subds. (b)–(d)), and that a principal personally used a firearm (former § 12022, subd. (a)(1)).

On January 30, 2007, a jury convicted defendant of first degree felony murder and second degree robbery, and found true the allegations that the murder had occurred while defendant committed the robbery, and that a principal had been armed with a firearm.  The jury was unable to reach a decision on whether defendant personally discharged or used a firearm, and the court declared a mistrial as to those special circumstance allegations.  Defendant was sentenced to life imprisonment without the possibility of parole, plus one year as to the murder count, and four years as to the robbery count, which the court stayed (§ 654).[2]

In 2019, defendant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under

---

[1]    Undesignated statutory references are to the Penal Code.  Neither codefendant is a party to this appeal.

[2]    During the sentencing hearing, the court dismissed the section 12022.53, subdivisions (b) through (d) allegations against defendant.

theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts.  (Stats. 2018, ch. 1015, § 1, subd. (f).)  The trial court summarily denied defendant's petition in a written memorandum. The court noted that section 1170.95 "may" apply to defendant, because our prior opinion affirming his conviction noted that the identity of the actual shooter had not been clearly established at trial.  However, the trial court concluded defendant was ineligible for relief as a matter of law because the jury had found true the robbery-murder special circumstance (§ 190.2, subd. (a)(17)), which required the jury to find that if defendant was not the actual killer, he aided and abetted the murder with the intent to kill the victim, or was a major participant who aided and abetted the robbery and acted with reckless indifference to human life.

Defendant appeals from the trial court's order, and contends that the trial court's summary denial of his petition should be reversed because it relied solely on the robbery-murder special circumstance finding in violation of *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), review granted June 24, 2020, S262011.  In *Torres*, Division Five held that a trial court commits reversible error by summarily denying a section 1170.95 petition based on the jury's robbery-murder special circumstance finding that predates *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Torres*, *supra*, at p. 1173.)  The Attorney General contends that *Torres*

3

was incorrectly decided, and that we should instead follow *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*), review granted, S264033, October 14, 2020.

Consistent with our prior decisions on the issue, we reverse the trial court's order in light of *Torres*, and remand the matter to allow the trial court to determine whether defendant has made a prima facie showing that he falls within the provisions of section 1170.95. Should the court find defendant potentially eligible for resentencing, the trial court must appoint counsel and order briefing.

## FACTUAL BACKGROUND[3]

Defendant and Thomas's trial was severed from that of Williams, who was tried first. We summarize only the evidence presented at defendant and Thomas's trial.[4]

At approximately 6:45 p.m. on February 24, 2005, Brandin Brinkley encountered defendant outside a 99¢ Store near Vermont and 61st Street. Defendant asked Brinkley where he could purchase gloves. After Brinkley directed defendant to the 99¢ Store, Brinkley saw him select a pair of black gloves and a pair of red and black gloves inside the store. Brinkley left the store and went home.

---

[3]     We granted defendant's request that we take judicial notice of the appellate record from his prior appeal in *People v. Williams et al.* (May 20, 2008, B198076) [nonpub. opn.] (*Lawson I*).) We recite the factual and procedural background from our prior opinion.

[4]     Defendant and Thomas did not present any evidence at trial.

4

Heng Bou testified that he was working in a doughnut store at 60th Street and Vermont on February 24, 2005. Approximately 20 to 30 minutes before he heard sirens and saw an ambulance, Bou saw two young, Black males purchase doughnuts and sit inside the store; the males left before Bou heard sirens.

Guadalupe Rivera testified that around 7:15 p.m. the night of the shooting, she drove to pick up her brother, Osman Alvarado, near a Dollar Warehouse located at Vermont and 60th Street. As she passed by, she saw two men standing outside the store, together with a third man wearing a mask. All three men were wearing hooded sweatshirts. Rivera parked her car and watched the masked man—the shortest of the three men outside the store—follow Alvarado into the Dollar Warehouse.[5] Rivera saw the masked man point a gun inside the store while the other men stood outside, watching him through a glass window. When the two men entered the store, the masked man abruptly left, and Rivera heard gunshots. After the three men ran away, another man emerged from the store holding his back and said he had been shot.

Alvarado testified that when he approached the Dollar Warehouse, he saw three men standing outside. One of the men wore a mask, and the others had hoods over their heads. While inside the store, Alvarado heard the masked man, accompanied by one of the other men, demand money, and a cashier responded, "Okay." When a

---

[5] Investigating officers later established that defendant was several inches shorter than Williams and Thomas.

struggle broke out involving the cashier, one of the men fired a gun, and Alvarado sought cover. After the three men left, Alvarado saw money on the floor near the store entrance. Alvarado never saw the robbers' faces, and he was unsure whether the masked man or the other accomplices held the gun.

Los Angeles Police Department officers responded and discovered the victim (Avila Rodriguez) wounded and lying on the ground. Rodriguez later died of a gunshot wound to his back. Officers found a gun in front of the store, a pair of gloves 200 feet away from the store, and sales tags for gloves in the doughnut shop's trash bin. The gun, which belonged to Rodriguez's friend, was kept in the store for Rodriguez's protection. Thomas's fingerprints were identified on the sales tags, and his DNA matched DNA on one of the recovered gloves.

Investigating officers obtained video surveillance in the 99¢ Store and the Dollar Warehouse, which were played for the jury. Video footage of the 99¢ Store showed defendant purchasing two pairs of black gloves and one pair of red gloves. Footage of the Dollar Warehouse showed the shooter wearing red gloves, a hooded sweater, and something covering his face. When Williams was arrested on March 6, 2005, he attempted to discard a firearm. A criminalist could not determine whether the discarded gun had fired the bullet recovered from Rodriguez's body.

When defendant and Thomas were interviewed in April 2005, both initially denied being around the area during the robbery and shooting. After Thomas learned that police had recovered his DNA from a recovered glove, he stated that he intended to participate in the

6

robbery, but later changed his mind and stood across the street from the Dollar Warehouse while the robbery occurred. When he heard a gunshot, he ran away. When defendant was shown photographs from video surveillance of the 99¢ Store, he admitted that he had purchased the gloves, but stated that he returned to his grandmother's house a half-mile away from the Dollar Warehouse. Defendant stated that he decided not to participate in the robbery because he did not want to get shot. He denied giving anyone the red gloves, though he could not recall what he had done with them.

## PROCEDURAL BACKGROUND

Defendant was charged with murder (§ 187, subd. (a), count 1) and robbery (§ 211, count 2). As to count 1, the information alleged that the murder was committed while defendant was engaged in the commission of robbery (§ 190.2, subd. (a)(17)). As to counts 1 and 2, the information alleged that defendant personally used and discharged a firearm causing death (§ 12022.53, subds. (b)–(d)), and that a principal in the crime was armed with a firearm (former § 12022, subd. (a)(1)). Defendant pleaded not guilty to each count and denied the special circumstance allegations.

Trial was by jury. The jury was instructed on felony murder, a theory of culpability for first degree murder.[6] The jury was also

---

[6] The jury was instructed inter alia that "[e]very person who unlawfully kills a human being during the commission of the crime of robbery is guilty of the crime of murder." The jury was also instructed that "[i]f a human being is killed by any one of several persons engaged in the commission of the crime

7

instructed on the robbery-murder special circumstance as follows: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: That the murder of David Rodriguez was committed during the crime of robbery, within the meaning of [section] 190.2(a)(17). [¶] . . . [¶] If you are satisfied beyond a reasonable doubt that a defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true. [¶] If you find that a defendant was not the actual killer of a human being, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill[,] aided, abetted, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery, which resulted in the death of a human being."

During deliberations, the jury asked: "If we cannot unanimously find on any 'special circumstances' question, is it ok to leave the question unanswered?" The court responded that if the jury reached a unanimous decision on a guilty verdict, but could not reach a unanimous decision on the special allegations, the foreperson "should complete the guilty verdict form, answer true or not true as to any

of robbery, all persons, who either directly and actively commit the act constituting that crime, or who . . . aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

8

special allegation for which you have unanimously agreed, and leave blank any special allegation for which you are unable to agree."

By verdict on January 30, 2007, the jury found defendant guilty of first degree felony murder, and found true the allegation that the murder was committed while defendant was engaged in the commission of robbery (§ 190.2, subd. (a)(17)). It also found true the allegation that a principal in the crime was armed with a firearm (former § 12022, subd. (a)(1)). The jury left blank portions of the verdict form pertaining to the allegations under section 12022.53, subdivisions (b) through (d). The verdict form did not specify whether the jury found beyond a reasonable doubt that defendant was the actual killer, intended to kill as an aider and abettor, or acted as a major participant with reckless indifference to human life.

The court sentenced defendant to life imprisonment without the possibility of parole, plus one year for the murder count, and four years for the robbery count, which the court stayed under section 654.

This court affirmed defendant's judgment of conviction in 2008. (*Lawson I*, *supra*, at p. 1.) We concluded that substantial evidence supported defendant's conviction for murder and robbery. (*Id.* at p. 7.) In doing so, we noted that the evidence supported "the reasonable conclusion that Lawson was the masked robber." (*Id.* at p. 17.)

On January 25, 2019, defendant filed a petition for resentencing pursuant to section 1170.95, claiming entitlement to relief because he was convicted of first degree murder under a felony-murder theory or the natural and probable consequences doctrine. Defendant requested that counsel be appointed on his behalf.

9

In a written memorandum of decision, the trial court summarily denied defendant's petition. The court explained that based on the statement of facts in our prior decision, "the identity of the actual shooter was not clearly established at trial." Thus, the court found defendant "may" be entitled to relief of his first degree felony murder conviction. Nevertheless, the court found defendant was ineligible for relief as a matter of law because the jury had found the robbery-murder special circumstance true, which required the jury to find that if defendant was not the actual killer, he had intended to kill the victim or was a major participant who acted with reckless indifference to human life.

Defendant timely filed a notice of appeal from the order denying his petition.

## DISCUSSION

1. *Governing Law*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), rev. granted,

10

S260493, Mar. 18, 2020.) Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony-murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*Verdugo, supra,* 44 Cal.App.5th at p. 327.) The court first "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The court then appoints counsel, if requested, and reviews the petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Ibid.*; see *Lewis, supra,* 43 Cal.App.5th at p. 1140.) If the court concludes the petitioner

11

has made a prima facie showing, it must issue an order to show cause. (§ 1170.95, subd. (c); *Verdugo, supra,* at p. 328.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra,* 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) The parties may rely on the record of conviction or present "new or additional evidence" to support their positions. (§ 1170.95, subd. (d)(3).)

2.  *Analysis*

Defendant contends the trial court's summary denial of petition was in error, because it could not rely on the jury's special circumstance finding made in 2007, before the Supreme Court's decision in *Banks* and *Clark*. We agree with defendant. The jury's 2007 robbery-murder special circumstance finding alone does not, as a matter of law, render defendant ineligible for relief. (*Torres, supra,* 46 Cal.App.5th at p. 1178.)

As amended by S.B. 1437, subdivision (e) of section 189 provides that participation in the perpetration or attempted perpetration of an enumerated felony (here, robbery) in which a death occurs renders a person liable for murder "only if one of the following is proven: . . . [¶] . . . [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree [or] [¶] (3) The person was a major participant in the underlying felony and acted with reckless

12

indifference to human life, as described in subdivision (d) of Section 190.2."

Section 190.2, subdivision (d), in turn, provides that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets . . . or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." Section 190.2, subdivision (a)(17) lists robbery as a qualifying felony.

The special circumstance finding in this case indicates that the jury found that defendant was the actual killer, *or* "with the intent to kill[,] aided, abetted, or assisted any actor in the commission of the murder in the first degree, *or* with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery, which resulted in the death of a human being." (Italics added.) At first blush, these findings appear to be in agreement with the findings required for upholding a first (or second) degree murder conviction following the issuance of S.B. 1437. However, because the jury rendered its findings in 2007 (about eight years prior to the *Banks* and *Clark* decisions) in a verdict that did specify whether defendant was the actual killer, defendant is not precluded from showing that he could not be convicted of first (or

13

second) degree murder as redefined by S.B. 1437. (*Torres, supra*, 46 Cal.App.5th at p. 1179.)

*Torres* explains: "[O]ur Supreme Court's decisions, clarifying what it means for an aiding and abetting defendant to be a 'major participant' in an underlying felony and to act with 'reckless indifference to human life,' construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*Torres, supra*, 46 Cal.App.5th at p. 1179.) The Supreme Court in "*Banks, supra*, 61 Cal.4th 788, which elucidated the meaning of 'major participant,' was decided in 2015, and *Clark, supra*, 63 Cal.4th 522, which addressed the meaning of 'reckless indifference to human life,' was decided in 2016." (*Ibid.*)

Both *Banks* and *Clark* were decided about eight years after the jury made its findings in defendant's case. Thus, when determining if defendant "could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [defendant] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time." (*Torres, supra*, 46 Cal.App.4th at p. 1179 [defendant's claim that the evidence presented against him failed to support robbery-murder special circumstance after *Banks* and *Clark* requires resolution of whether the facts as given "are legally sufficient in light of *Banks* and *Clark*"]; accord, *In re Miller* (2017) 14 Cal.App.5th 960, 979–980.)

The Attorney General contends this court should not follow *Torres*, but should instead follow *Gomez, supra,* 52 Cal.App.5th 1. In

*Gomez*, the petitioner appealed from the summary denial of her section 1170.95 petition and argued there was insufficient evidence to support the jury's pre-*Banks* and pre-*Clark* kidnapping and robbery special circumstance findings.  (*Id.* at p. 13.)  In rejecting the contention, the court of appeal noted that it had already upheld the special circumstance findings in a prior appeal from the judgment.  (*Id.* at pp. 16–17.)  It also held that "the proper procedure for [the petitioner] to challenge her special circumstance findings based on clarification of the relevant law in *Banks* and *Clark* is to bring a petition for habeas corpus."  (*Id.* at p. 17.)

In a more recent decision, our colleagues in Division One disagreed with the *Torres* decision, though the court did not "necessarily agree with all the reasoning in *Gomez*."  (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142 (*Galvan*), rev. granted, S264284, Oct. 14, 2020.)  Under the reasoning set forth in *Galvan*, defendants like Lawson would not be entitled to relief under the plain language of section 1170.95, because the present inability to convict was not "'because of changes'" made by S.B. 1437 (see § 1170.95, subd. (a)(3) [petitioner entitled to relief because he "'could not be convicted of . . . murder because of changes to Section[s] 188 or 189 made effective" January 1, 2019], but because of the "clarification of the requirements for the special circumstance finding in *Banks* and *Clark*."  (*Galvan*, *supra*, at p. 1142.)  The *Galvan* court agreed with *Gomez* that petitions under section 1170.95 are not "proper vehicle[s]" for challenging a special circumstance finding.  (*Id.* at p. 1141.)

15

Mindful of the conflicts in the law, we continue to follow *Torres*. Defendant' section 1170.95 petition seeks to have his "murder conviction vacated and to be resentenced" on any remaining counts. (§ 1170.95, subd. (a); see *People v. York* (2020) 54 Cal.App.5th 250, 260 ["[o]ur analyses in *Torres* and [*People v*.] *Smith* [(2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835,] recognized that section 1170.95 permits a petitioner to challenge a *murder conviction*"].) Thus, because a petitioner's entitlement to section 1170.95 relief may require consideration of the verdict (including any special circumstance findings), the *Banks* and *Clark* decisions remain relevant for making such determination. The verdict in this case reveals a true finding under section 190.2, subdivision (a)(17). Because the jury was not instructed on the standards as enunciated in *Banks* and *Clark*, and because the jury did not find that defendant was the actual killer (the jury did not reach a decision on whether defendant personally used or discharged a firearm under section 12022.53, subdivisions (b) through (d)), we cannot conclude that defendant is precluded from relief as a matter of law at this preliminary prima facie step.

Anticipating this result, the Attorney General argues that any error under *Torres* was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, because it is evident from defendant's record of conviction that his conduct satisfies the *Banks* and *Clark* tests for major participation and reckless indifference to human life. We disagree. *Watson* does not apply when a trial court erroneously concludes a petitioner is ineligible for relief as a matter of law at the

16

first prima facie stage under section 1170.95.  The court's role at this stage "is simply to decide whether the petitioner is ineligible for relief as a matter of law, *making all factual inferences in favor of the petitioner*.  [Citation.]"  (*Verdugo, supra*, 44 Cal.App.5th at p. 329, italics added; see also *ibid.* [first prima facie stage "must also be different from the postbriefing prima facie showing . . . if only in the nature and extent of materials properly presented to the court in connection with the second prima facie step"].)  Contrary to the Attorney General's suggestion, we cannot collapse the first prima facie step into the second.

Therefore, because it is possible that defendant was punished for conduct that is not prohibited by section 190.2 as currently understood after *Banks* and *Clark*, we conclude "that the trial court erred in ruling that the pre-*Banks* and *Clark* robbery-murder special circumstance finding[] preclude [defendant] from relief as a matter of law."  (*Torres, supra*, 46 Cal.App.5th at p. 1180.)  We remand to the trial court to determine whether, considering the record of conviction, defendant is otherwise ineligible for relief as a matter of law, or is entitled to appointment of counsel and briefing in accordance with section 1170.95.

//

//

//

//

//

//

## DISPOSITION

We remand the matter for the trial court to determine whether defendant has made a prima facie showing that he falls within the provisions of section 1170.95.  If the trial court finds defendant is potentially eligible for resentencing under section 1170.95, it must appoint counsel and order briefing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

18